CASTNER ELECTROLYTIC ALKALI CO. v. DAVIES.

(Circuit Court of Appeals, Second Circuit. May 30, 1907.)

No. 280

1. MASTER AND SERVANT—ACTION FOR DEATH OF SERVANT—QUESTION FOR JURY.

Plaintiff's intestate, who was employed in defendant's factory, was killed at about 9 o'clock in the morning by the explosion of a water heater in the room where he was working used to heat the water in a tank in another room 75 feet distant; the connection being by means of pipes from 2½ to 3 inches in diameter. The fire under the heater was found to be out and the heater cold at 12 o'clock the night before, when the night shift came on to work, but, not being in use at night, the foreman who had general supervision of the plant took no action in respect to it, and the fire was rekindled by the janitor at about 8 in the morning. The outside temperature during the night was about 2 degrees below zero, and the room where the heater stood was quite large, with several outside windows, and was not otherwise heated, although there was a large doorway opening into an adjoining room which was kept heated at all times. A crack in the heater observed immediately before the explosion extended diagonally, and did not follow the line of any seam. There was no direct evidence as to the cause of the explosion. Held, that such facts and circumstances were sufficient to warrant the submission to the jury of the question whether it was caused by the freezing of the pipes preventing the circulation of the water through them to the tank which ordinarily obviated any danger and rendered an escape valve on the heater unnecessary.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1016.]

2. SAME—LIABILITY FOR NEGLIGENCE OF FOREMAN—NEW YORK EMPLOYER'S LIABILITY ACT.

Under the New York Employer's Liability Act, Laws 1902, p. 1748, c. 600, which makes an employer liable for the negligence of any person in his service "intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence," the owner of a factory is liable for the death of an employé caused by the negligence of a foreman whose sole duty was to superintend the work of a shift of men under him, make out reports, and to have charge of the appliances in the rooms in which they worked.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 371–373.]

3. SAME—NOTICE OF INJURY.

Notice to a defendant who operated a factory that on a certain date an employé named was killed in defendant's building by reason of the explosion of a hot-water tank maintained in said building at said time, and that the explosion was due to defendant's negligence, is sufficiently specific under the New York Employer's Liability Act, Laws 1900, p. 1748, c. 600, requiring notice to be given of the "time, place and cause of the injury."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 806.]

4. EVIDENCE—COMPETENCY—OPINION OF EXPERTS.

While it is competent for expert witnesses to enumerate the various causes which might have produced a given effect, and to state what bear-

ing specific facts shown in evidence would have upon the probability or improbability of one or more of such causes being operative at the time and place, it is not competent for them to state an opinion upon all the evidence, as to what cause was in fact operative; that being the final inference to be drawn by the jury.

5. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.
    The erroneous admission of the opinions of witnesses as to the cause of an explosion *held* without prejudice, where the material facts were not in dispute, and the opinions were merely arguments therefrom.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4153.]

In Error to the Circuit Court of the United States for the Western District of New York.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Western District of New York, in favor of defendant in error, who was plaintiff below. The judgment was entered upon the verdict of a jury and was for damages resulting from the death of plaintiff's intestate; it being alleged that his death was caused by the negligence of defendant.

H. C. Meinard and Clinton B. Gibbs, for plaintiff in error.
Bushnell & Metcalf, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. Plaintiff was at work in what was known as the "cell mounting room" in defendant's plant for the manufacture of caustic soda at Niagara Falls. This room was about 20x30 feet in size, situated on the first floor, with some windows opening outdoors and others in the top for ventilation. Except for the "water heater" hereinafter mentioned, there was no means for heating this room. It communicated by a large door through a brick wall with an adjoining room, known as the "cellroom," which was always warm, being heated by steam night and day. In the cell mounting room there was a hot-water heater variously estimated at from three to five feet in height, which was connected with a large tank, upon which there was a cover, located in the pump room 75 or 80 feet distant. The connection was by two pipes, a discharge and an intake. The heated water in the tank was used in the process of manufacture. Besides receiving the inflow of heated water from the heater, the water in the tank could also be warmed by a steam jet opening into it and leading from the main steam supply in another part of the building. Work was carried on night and day by three eight-hour shifts, but no one worked in the cell mounting room at night. At about 7 a. m. of Monday January 25, 1904, one Thomas, the sweeper or janitor of that part of the building, reached the plant and went into the cell mounting room. He found the fire under the heater "dead out," and the heater cold. It being a part of his duties to keep the fire going and to light it up when it went out, he cleaned out the fire box, and built up a new fire, which he lighted a little before 8 a. m. Some time between 9 and 10 a. m., the day shift being then at work in the room, a small quantity of steam and water was observed oozing through a crack about four or five inches long, running diagonally about two-thirds

the way down the heater. Thomas started to report the circumstance to a foreman, but within a few minutes the heater exploded, killing plaintiff's intestate almost instantly. The complaint charged negligence in superintendence of the operation of the heater, and also in maintaining a heater not supplied with steam gauge or safety valve. The undisputed evidence showed that, so long as the connection was open with the large tank, no such appliances were needed, since the intake and discharge insured a constant circulation and the tank acted as an expansion chamber. Thereupon the charge of defective appliances was withdrawn.

The theory of the plaintiff was that the water in these pipes froze, thereby stopping the circulation, so that the imprisoned water, expanding and turning into steam under the influence of the relighted fire, exploded the heater. There was no direct proof of the presence of ice in the pipes, and the fundamental question is whether there was enough in the testimony to send the case to the jury—whether the presence of obstructing ice was a reasonable inference from facts which the jury might find to be proved or whether to reach such a conclusion was mere blind guesswork. Defendant's counsel points out that the janitor testified that he did not think it was below freezing when he reached the·room at 7 a. m., and that no one else testifies to the temperature in the cell mounting room; that such room communicated with a lavatory and also with the cellroom, which was always heated, by a large opening which was always open; that these pipes never froze before, so far as any one knows; that water kept in certain cell bottoms in the cell mounting room had never been known to freeze; that the hot water in the tank, kept heated by the steam jet, would have a tendency to cause water to circulate through the pipes, even if the fire under the heater was extinguished; that it would go slowly, and that moving water does not freeze unless it is moving very slowly; that pipes choke up otherwise than by freezing of the water within them;·that they become obstructed sometimes by accumulations of dirt or sediment from the water, or incrustations from the water on the inside of the pipes, sometimes from oil solidifying in time by the action of heat upon it, sometimes accumulations of red lead used in making joints would stop pipes up if they were small; that boilers sometimes explode from improper riveting or drilling of the holes that hold the rivets, or from poor or weak material.

On the other hand, it appeared that no one worked in that room at night, which accounts for nonproduction of direct evidence as to its temperature; that it was very cold from 8 p. m. till midnight and (by Weather Bureau Records) that from midnight till 7 a. m. the temperature outdoors was continuously one to two degrees below zero; that there was no heat supplied to the room except such as came from the heater itself or through the opening into the adjoining room, and that there were several windows opening into the room from without—six of them, defendant's witness says—that, so far as appears, the fire had not theretofore been left unlighted during a night of zero weather; that the water in the cell bottoms was pure water from the Niagara river, while the water in the heater was water which had been once heated, one of defendant's expert witnesses testifying that water which

has been heated will freeze a great deal more quickly than cold water which has not been subjected to heat; that the connecting pipes, over 70 feet in length, were not covered or protected; that they were from $2\frac{1}{2}$ to 3 inches in diameter, and that defendant's expert testified that he would not expect stoppage by rust scales or sediment in pipes of that size; that other witnesses testified that obstruction through accumulation of foreign matter would be likely to come about gradually and to give indications of its approach by such a reduction of water supply as would challenge attention; that the crack through which the steam and water was oozing is not shown to have been located at any line of rivets, and that there was nothing to indicate any latent defect in the material of which the heater was composed. There was no substantial conflict in the testimony as to the evidential facts, and the inferences drawn from them by the jury, as indicated by the verdict, seem to us reasonable and legitimate. Plaintiff was under no obligation to show the physical presence of ice in the pipes. No doubt it disappeared quickly after the catastrophe.

It is suggested that the proximate cause of the accident was the relighting of the fire, which was the act of Thomas, a fellow servant, for whose negligence defendant would not be responsible, and it was assigned as error that the court declined to submit the question of his negligence to the jury. The evidence, however, does not sustain a finding that Thomas was negligent in lighting the fire. It was his duty to do so generally when he found it out. On this occasion the heater was cold to the touch, but, for aught he knew, the fire might not have been extinguished more than two or three hours. He had no means of knowing that it had been out all night with the water in pipes and heater exposed to a very low temperature. He might fairly assume that whoever had been in charge prior to his coming would have looked after it, or left word for him if there were any risk of its being frozen. The real negligence in the case is to be found in the conduct of the person in charge before Thomas arrived. The testimony showed that Ringleb, an extra foreman, was in charge of the shift from 8 a. m. to 4 p. m. of the day before. When he left at 4 p. m., the heater was operating with a fire in it. He returned at midnight to take the shift till 8 a. m., and found the fire out and the heater cold. Evidently the fire went out during the tour of duty of foreman Erway (4 p. m. to 12 midnight), and so long a time before Ringleb returned that the heater had grown cold. Ringleb did not have the fire relighted during the eight hours of his tour of night duty. The court left it to the jury with instructions that the important question in the case was whether it was negligent in the foreman to fail to keep the fire going, considering the state of the weather, and that in the ordinary course of business the fire would be relighted the next day. They found that the foreman was negligent, and we think their conclusion was correct. Ringleb knew the weather was bitterly cold. When he arrived at midnight, it was two degrees below zero. He knew that the fire had been out so long that the heater was already cold. The jury might fairly find that a man of ordinary prudence would either have had the fire rekindled so as to take the apparatus safely through the long cold night, or else would have passed the word on to the next

shift to be cautious about relighting it in view of its abnormally long exposure to cold.

The action was brought under the New York employer's liability act (chapter 600, p. 1748, Laws 1902), which has modified the law of master and servant so as to make the employer liable for the negligence of any person in his service "intrusted with and exercising superintendence whose sole or principal duty is that of superintendence." That Ringleb was within this provision is manifest from his own description of his duties. He testified that:

"As foreman he had charge of the shift of six men working under him. His duties were to look after all that cellroom department. He simply looked after the process work and the men. He had charge of the pump room, one man in there, and the cellroom and the cell mounting room. He simply told the men what to do, and made out reports, and they were required to do what he told them. * * * He had the right to decide whether the heater should be run or not, and it was part of his duties."

The statute above cited requires "notice" to be given within 120 days after the accident, and that said notice shall state the "time, place and cause of the injury." The notice in this case states that on January 25, 1904, Earl W. Davies was killed in one of defendant's buildings at Niagara Falls by reason of the explosion of a hot-water tank maintained in said building at said time, and that the explosion aforesaid was due to defendant's negligence. Such notice complied fully with the requirements of the statute, and is much more specific than the one which was held to be insufficient in Miller v. Solway Process Co., 109 App. Div. 135, 95 N. Y. Supp. 1020, upon which defendant relies.

· Exceptions to the admission of testimony have been presented. Several witnesses, some of them experts in heating and steam apparatus and others not, were allowed to answer questions which asked them what in their opinion was the cause of the explosion. The question was improper. It was competent for the experts to enumerate the various causes which might produce such a result, and, their attention being called to any facts in proof (such as diameter of pipe, condition of water, etc.), to state what bearing the existence of those facts would have upon the probability or improbability of one or more of those causes being operative at that time and place. But the final inference from all the facts in proof as to what was the cause which produced the explosion was one for the jury to draw upon consideration of those facts, illuminated by the experience of the experts. We are not satisfied, however, that the admission of the testimony objected to was harmful error. There was no dispute as to any material fact, and the opinions expressed were accompanied by such a statement of the reasoning which led to the witnesses' "opinions" that the answers were but arguments only, of the weight of which the jury was quite well able to judge.

The judgment is affirmed.